IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.B. and R.B., | |
| Plaintiffs, | |
| v. | Case No. 23-cv-01206 |
| BLUECROSS BLUESHIELD of ILLIONIS and the MONDOLEZ GLOBAL LLC GROUP BENEFITS PLAN, | Judge Mary M. Rowland |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff C.B., individually and on behalf of R.B., brings this Employee Retirement Income and Security Act ("ERISA") action against Defendants Blue Cross Blue Shield of Illinois ("BCBSIL") and Mondelez Global LLC Group Benefits Plan (the "Plan," and collectively, "Defendants"). Plaintiffs allege in their amended complaint that Defendants wrongly denied coverage for mental health treatment in violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"). For the reasons stated herein, Defendants' motions to dismiss [61]; [63] are granted.

I. Background

The Plan is a self-funded employee welfare benefits plan under ERISA, and BCBSIL is an independent licensee of the Blue Cross and Blue Shield network of providers and the fiduciary under ERISA for the Plan. [55] ¶¶ 2, 3. C.B. is a

1

participant in the Plan and R.B. was a beneficiary during time of the events that gave rise to this litigation. [55] ¶ 4.

R.B. has a history of severe anxiety, depression, suicidal thoughts, and aggressive behaviors. [55] ¶ 11. R.B. received treatment at Triumph Youth Services ("Triumph"), a licensed residential treatment center ("RTC") located in Box Elder County, Utah. [55] ¶¶ 5, 6. BCBSIL denied claims for payment of R.B.'s medical expenses at Triumph and C.B. appealed the denial. [55] ¶¶ 12-13. BCBSIL denied the appeal because the Plan only covered treatment at RTCs as they are defined in the Plan, and the Plan's definition of an RTC requires there to be "24 hour medical availability and 24 hour onsite nursing service for patient[s] with Mental Illness and/or Substance Use Disorders." *See* [55] ¶ 32. Because Triumph did not require a 24-hour onsite nursing presence, BCBSIL claimed denial was appropriate.

Plaintiffs filed their original complaint (the "Original Complaint") on October 21, 2022, alleging that Defendants violated the Parity Act by imposing a non-quantitative treatment limitation ("NQTL")—specifically, the 24-hour onsite nursing presence requirement—on mental health benefits that are not imposed on analogous medical benefits. [2]. Defendants filed motions to dismiss [33]; [34], and in their briefing on the motions, Plaintiffs conceded that the medical benefits that are analogous to RTCs are Skilled Nursing Facilities ("SNFs"), and that SNFs also require 24-hour onsite nursing presence. [41] at 1. Plaintiffs nonetheless argued that the Plan's 24-hour requirement was not a part of the generally accepted standard of care ("GASC") for RTCs. [41] at 9-10. However, this Court found that the GASC set

out in the in the American Academy of Child and Adolescent Psychiatrists' "Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers" concluded that one GASC for RTCs is that an RTC have either a "registered nurse with at least one year experience in mental health services or a mental health worker" who "should provide 24 hour developmentally sensitive child supervision, leisure and supportive care." [54] at 3. This Court dismissed Plaintiffs' Original Complaint without prejudice because Plaintiffs failed to plausibly allege that the differences between the Plan's requirements for RTCs and SNFs violated the Parity Act.

In their amended complaint, Plaintiffs bring two counts. In Count I, Plaintiffs allege that Defendants violated the Parity Act in four distinct but similar ways: (i) by imposing treatment limitations on RTCs that are unnecessary for mental health treatment but not imposing treatment limitations on SNFs that are unnecessary for medical/surgical treatment, (ii) by imposing treatment limitations on RTCs that go beyond medical necessity while imposing only medically necessary treatment limitations on SNFs, (iii) by denying claims at duly licensed RTCs while accepting claims substantially all duly licensed SNFs, and (iv) imposing treatment limitations on RTCs that exceed the GASC for RTC while only imposing treatment limitations on SNFs that do not exceed the GASC for SNFs. [55] ¶¶ 47 – 79. In Count II, Plaintiffs seek a judgment in the amount of medically necessary services that R.B. obtained at Triumph and that the Plan would have covered if not for the alleged Parity Act violations. [55] ¶¶ 82 – 91.

3

**II. Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial

4

experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

### III. Analysis

The Parity Act requires that any limitations on "mental health or substance use disorder benefits" (hereinafter, "MH/SUD") in an ERISA plan be "no more restrictive than the predominant treatment limitations applied to substantially all [covered] medical and surgical benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii). Thus, to succeed on a claim under the Parity Act, a plaintiff must show that an ERISA plan that offers both medical/surgical benefits and mental health benefits imposed a more restrictive limitation on mental health/substance use disorder MH/SUD treatment than limitations on treatment for medical and surgical issues. *See Stone v. UnitedHealthcare Ins. Co.*, 979 F.3d 770, 774 (9th Cir. 2020).

As other courts have recognized, "there is no clear law on how to state a claim for a Parity Act violation." *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1234 (D. Utah 2019). Plaintiffs urge the court to adopt the test used by either the Ninth Circuit or Tenth Circuit. The Ninth Circuit held in *Ryan S.* that it is sufficient to state a claim under the Parity Act when a plaintiff alleges that an ERISA plan applies "a more stringent review process" to MH/SUD claims than to medical/surgical claims. *Ryan S. v. UnitedHealth Grp., Inc.*, 98 F.4th 965, 969 (9th Cir. 2024). Similarly, in *E.W.*, the Tenth Circuit held that it is sufficient to "plausibly allege a disparity between the treatment limitation on [MH/SUD] benefits as compared to the limitations that defendants would apply to the medical or surgical analog." *E.W. v.*

*Health Net Life Ins. Co.*, 86 F.4th 1265, 1283 (10th Cir. 2023). Under either of these tests, however, Plaintiffs have failed to state a claim.

The problem for Plaintiffs is that Defendants apply the same treatment limitation—a 24-hour nursing presence requirement—to both RTCs and their medical/surgical analog, SNFs.[1] Plaintiffs argue that because the Plan's definition of RTCs explicitly requires a 24-hour nursing presence while the Plan's definition of SNFs does not, the Plan contains a disparate treatment limitation. But the Plan provides that it will only cover SNFs that are "certified in accordance with the guidelines established by Medicare." [64-1] at 32. And the relevant Medicare regulations require a 24-hour nursing presence for SNFs. *See* 42 U.S.C. § 1395i-3(b)(4)(C)(i). Thus, the Plan imposes the same 24-hour requirement on both RTCs and SNFs. There is "no disparity between the treatment limitation imposed [MH/SUD] benefits as compared to the limitations that defendants would apply on the medical or surgical analog." *E.W.*, 86 F.4th 1265 at 1283.

Plaintiffs also argue that Defendants apply "more stringent internal processes" to RTCs than SNFs, as contemplated by the *Ryan S.* test. Plaintiffs suggest that the 24-hour requirement is a more stringent internal process because the 24-hour nursing requirement is medically necessary at SNFs but goes beyond what is medically necessary at RTCs. They also argue that the plan imposes extra licensure

---

[1] Plaintiffs concede that SNFs are the medical/surgical analog to RTCs. *See* [55] ¶ 24. The relevant federal regulations likewise identify SNFs and RTCs as analogous. 78 Fed. Reg. 68247. Plaintiffs also suggest intermittently in their amended complaint that Inpatient Rehabilitation Facilities ("IRFs") are the appropriate analogue. *See* [55] ¶¶ 35, 44. But, like SNFs, the relevant regulations require that IRFs also maintain a 24-hour nursing presence. *See* 42 U.S.C. §§ 1395x(e)(1)-(5) (explaining that an institution that provides rehabilitation services is a hospital, and that hospitals are required to provide 24-hour nursing services).

requirements on RTCs that are not imposed on SNFs, and that the 24-hour requirement exceeds GASC for RTCs but not for SNFs. But the *Ryan S.* court's reference to an "internal review process" referred to the review process that an insurer undertakes in reviewing specific claims, not the kind of categorical process by which the Plan defines RTCs and SNFs that Plaintiffs take issue with here. *See Ryan S.*, 98 F.4th at 973. Plaintiffs' allegations regarding GASCs and medical necessity are of another matter entirely than what the court in *Ryan S.* contemplated.

But even if the Court adopted a broader view of an "internal review process," Plaintiffs' Parity Act claim would still fail because the relevant treatment limitation is equally applied for RTCs and SNFs. Plaintiffs take issue with the fact that the Plan applies the *same* treatment limitation on RTCs and SNFs, not that the Plan applies *different* treatment limitations. Plaintiffs may well be right that, for example, the 24-hour nursing requirement is medically necessary for SNFs but not for RTCs, or that the requirement goes beyond RTCs' GASCs, but the fact that the Plan applies the treatment limitation to both analogues equally precludes Plaintiffs from stating a Parity Act violation. *See* 29 C.F.R. § 2590.712(c)(2)(ii)(C)(2) (a treatment limitation applied equally to medical/surgical benefits and MH/SUD does not violate the Parity Act). As for the Plan's licensing requirements, there is no requirement in the Parity Act that ERISA plans do not place higher standards on treatment centers than those required by state licensing as long as the standards are applied equally. *See L.P. v. BCBSM, Inc.*, No. 18-cv-1241, 2020 WL 981186, at *7 (D. Minn. Jan. 17, 2020). These allegations are insufficient to state a Parity Act claim.

7

The Court is deeply frustrated with the limits of the Parity Act in this regard. R.B. suffered from mental health issues that required care at the level provided at an RTC. According to the facts alleged in the complaint, Defendants initially communicated to Plaintiffs that R.B.'s care would be covered because of an internal error. [55] ¶¶ 11, 14. Plaintiffs then incurred medical expenses totaling more than $165,000 to obtain what may have been lifesaving care for R.B. [55] ¶ 34. This sequence of events is very troubling. As it stands now, the Parity Act, despite its goal of requiring insurance companies to cover care for mental health, leaves plaintiffs like R.B. unable to state a claim *for the care he needed and properly received* for his mental health challenges. Because Plaintiffs' second count is dependent on their Parity Act claim surviving, *see* [55] ¶82, that claim fails too.

IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [61]; [63] is granted.

E N T E R:

Dated: February 18, 2025

*[signature: Mary M Rowland]*

MARY M. ROWLAND
United States District Judge

8